(Reap. Dec. 8277)

CHARLES STOCKHEIMER
INTER-MARITIME FWDG. CO., INC. } *v.* UNITED STATES

Entry Nos. 888354; 953305.

(Decided January 14, 1954)

*Bernard B. Smith; Allerton deC. Tompkins,* associate counsel; for the plaintiffs.
*Warren E. Burger,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

OLIVER, Chief Judge: These appeals for reappraisement, presenting for determination the value of cashmere sweaters exported from Scotland and imported at the port of New York, have been submitted for decision on an agreed set of facts, setting forth in much detail different phases of market conditions as they relate to the issue raised in the stipulation of submission.

Under the agreed facts, the proper basis for appraisement of the present merchandise is cost of production, defined in section 402 (f) of the Tariff Act of 1930, as follows:

(f)   COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1)   The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2)   The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3)   The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4)   An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

All of the elements embodied in the foregoing statutory definition have been established within the stipulated facts, except the cost of "materials" (cashmere yarn). Thus, the issue herein involves judicial interpretation of that part of section 402 (f) (1), *supra,* covering the—

\* \* \* cost of materials of \* \* \* of such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business.

It appears from the undisputed facts that cashmere yarn of the kind used in the production of the sweaters in question "cannot be purchased in the open yarn market for immediate delivery," that "such cashmere yarn can be purchased only for future delivery," and that "in the ordinary course of trade and events" 9 months elapse "between the date when the British manufacturer of the specified imported sweaters places his order with the cashmere yarn producer for the yarn of the kind used in the said sweaters, and the date when the said yarn is delivered by the said yarn producer to the said sweater manufacturer." The stipulated facts further show that the sweater production period in the case of the merchandise covered by reappraisement 223280-A is 70 days, and, in the case of the articles covered by reappraisement 223281-A, is 3 months, which elapsed periods of time "ordinarily permit the manufacture or production of the said cashmere sweaters from cashmere yarn."

The appraiser, in his official appraisement, adopted prices at which cashmere yarn producers "were offering cashmere yarn (of the kind used in the production of the specified imported sweaters) for sale for future delivery" on the dates when production of these sweaters commenced. The yarn offered for sale for future delivery on the dates used by the appraiser "could not have been delivered in time to be used in the production of the specified imported sweaters." Hence, the established facts, with respect to the appraiser's action, can be viewed as showing only that cashmere yarn, such as that used in these imported sweaters, was *being offered* on certain dates.

Offers for sale, in the absence of actual sales, have been held to be sufficient in finding *value* for tariff purposes. *Oceanic Trading Co.* v. *United States*, 21 C. C. P. A. (Customs) 146, T. D. 46478. The issue herein, however, is not a determination of *value*. Instead, the question before me involves a finding of the *cost* of materials. The terms "value" and "cost" are used frequently in section 402 of the Tariff Act of 1930, covering the statutory definitions for determining value, and in judicial interpretations thereof both terms have been given definite distinct meanings. In the case of *United States* v. *F. W. Woolworth Co.*, 26 C. C. P. A. 33, T. D. 49576, wherein the controversy concerned the costs of packing charges, etc., the court emphasized the distinction between "value" and "cost" as follows:

Section 402 (d) of the Tariff Act of 1930 includes within the definition of export value (the value with which we are here concerned)—

the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It would seem to be clear, therefore, that, in *ascertaining* or *estimating* export value of imported merchandise, the appraiser is required to *ascertain* or *estimate* the *costs* of containers, and other costs, charges, and expenses included in the definition of export value, and has no authority to *ascertain* or *estimate* the *value* of such containers, etc. *United States* v. *Richard & Co.*, 14 Ct. Cust. Appls. 120, T. D. 41646; *United States* v. *F. W. Woolworth Co.* et al., *supra.* [Italics quoted.]

The case of *United States* v. *European Trading Co.*, 27 C. C. P. A. (Customs) 289, C. A. D. 103, recognized the distinction to be made between "value" and "cost" in determining statutory cost of production. Although that case arose under the Antidumping Act of 1921, the definition of cost of production contained in section 206 thereof is substantially the same as it appears in the present act, section 402 (f), *supra.* The merchandise involved in the *European Trading Co.* case was galvanized wire fish trap netting. The court held that the appraiser had erroneously included within the statutory cost of production an amount, characterized as "an export rebate," granted to the German manufacturer upon the purchase in the foreign market of wire rods used in obtaining wire employed in the manufacture of the imported netting. In reaching its conclusion, the court stated as follows:

The Government insists, in effect, that, while the *finished netting* had no foreign value, the rods, *per se*, did have and that the *per se* foreign value of the rods, instead of their actual cost, must be taken as the element in determining the cost of production of the finished netting.

It would seem that to sustain the Government's position here would require the combining of the foreign-market value section (205) with the cost of production section (206) of the antidumping act. That is, it would require the foreign value of one of the materials (iron rods) to be determined and that value substituted for the actual cost of such iron rods in arriving at the cost of production of the completed netting. It is clear that under the statute this theory is untenable.

The case of *Stirn* v. *United States*, 12 Ct. Cust. Appls. 42, T. D. 39981, is also in point. There, the merchandise in question consisted of dyed thrown silk, known as "organzine." The raw silk, known as silk in the gray, was supplied by J. B. Martin & Co. of Norwich, Conn., an American corporation, that purchased the material in this country and shipped it to J. B. Martin of Lyons, France, a French corporation, to be there manufactured into silk yarns, dyed, rolled on beams, and returned to the American corporation in Norwich, Conn. Although Martin of Lyons was regarded as the manufacturer in France of the imported merchandise, that company, itself, did not perform all of the processes that ultimately resulted in the imported "organzine." One company performed the twisting process which converted the raw silk into yarn. Another party dyed the material. Martin of Lyons rolled the dyed yarn on the beams and prepared it for shipment to the United States. The particular amount upon which the appellate court reversed the trial tribunal (*L. & E. Stirn* v. *United States*, 41

Treas. Dec. 476, T. D. 39180) covered the profit charged by the manufacturer, Martin of Lyons, for rolling the silk on the beams. In holding that *costs* should be considered in determining statutory "cost of materials," the court stated as follows:

We do not agree with the importer's contention that the item of general expense and profit charged to Martin of Lyons by the throwster and dyer was not properly included in ascertaining the cost of these operations. The amount paid for such operations was a part of the cost of fabrication to the manufacturer, Martin of Lyons. But the item 10.55 francs for rolling, including as it did the item of profit, was more than the actual cost of that operation to the manufacturer, hence the profit of 1.43 francs could not be included in the cost of the rolling, and then be subjected to a further increase of 8 per cent, as was done in this case.

The distinction between the terms "value" and "cost," as enunciated in the above-cited cases, is consistent with the difference in the common meaning of the two words. Webster's New International Dictionary defines "value," as the "estimated or assessed worth," and, in the same recognized authority, "cost" is defined as "The amount or equivalent paid * * * for anything." Funk & Wagnalls New Standard Dictionary defines "cost" as "the price paid."

It follows from all of the foregoing that there is a definite distinction between the terms "value" and "cost." At the same time, it should be recognized that, under certain circumstances, the "value" of a commodity may also be its "cost." In the case of *Cliquot's Champagne* v. *United States*, 70 U. S. 114, the judge, in his charge to the jury, defined market value as follows:

The market value of goods is the price at which the owner of the goods, or *the producer, holds them for sale;* the price at which they are freely offered in the market to all the world; such prices as dealers in the goods are willing to receive, and *purchasers* are made to pay, when the goods are bought and sold in the ordinary course of trade. You will perceive, therefore, that the actual cost of the goods is not the standard. On the contrary, that having been the standard, the law has been changed, and for the standard of the cost has been substituted another standard, to wit, the actual market value. [Italics supplied.]

See also *Muser* v. *Magone*, 155 U. S. 240 (at p. 249).

In the issue before me, "cost" is the standard. In a stabilized market, the cost of the yarn and the value thereof could be the same at a particular time, but in a fluctuating market, where cashmere yarn is sold only for future delivery (which is the condition presented herein), the cost of the yarn when purchased, and its value at the time when actually used, may have no relationship. The "cost of materials," determinable under the statute (section 402 (f) (1), *supra*), must be fixed or positive. It cannot be an indefinite amount, such as a quoted price or an "offering" price contingent upon future delivery.

In this case, the appraiser accepted as the "cost of materials," the "offering" prices of yarn at the time production of these imported sweaters commenced; the specific dates being March 9, 1951, for the

merchandise covered by reappraisement 223280–A, and May 24, 1951, for the merchandise covered by reappraisement 223281–A. Such amounts might be considered, under certain conditions, to be the value of the yarn on the particular dates adopted by the appraiser, but under the present issue they fail to meet requirements of the statute. First of all, neither of the appraiser's figures is a "cost," within the meaning of that word, as hereinabove analyzed. Furthermore, they are not prices for yarn at a time "which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business." The deficiency in the appraiser's action on that phase of the statute lies in the fact that the prices he used cannot be applied to the production "of the particular merchandise under consideration in the ordinary course of business." This conclusion is supported by stipulated facts showing that "in the ordinary course of trade and events "nine months" elapse between the dates of yarn order and yarn delivery, and that the production period for the sweaters covered by reappraisement 223280–A is "70 days," and for those covered by reappraisement 223281–A, the period of production is "3 months." Thus, the applicable time for determining "cost of materials" under the present issue becomes a matter of simple arithmetic: Deduct the total number of days covered by the sum of 9 months and the established production periods for the present merchandise, from the dates of exportation (May 18, 1951, for the merchandise covered by reappraisement 223280–A, and August 24, 1951, for the merchandise covered by reappraisement 223281–A). In accordance with the stipulated facts, and consistent with the computation immediately hereinabove set forth, I find "cost of materials" on June 9, 1950, for the merchandise covered by reappraisement 223280–A, and on August 24, 1950, for the articles covered by reappraisement 223281–A, to be controlling herein. Since the appraiser's determination of "cost of materials" under section 402 (f) (1), *supra*, fails to meet statutory requirements in that the price he adopted in each of these appeals was neither a "cost" nor a compliance with the time element provided therefor, his action under said section must be, and hereby is, held to be erroneous.

Plaintiffs make several claims. Each is predicated upon an individual or a particular set of facts embodied in the stipulation of submission. Counsel's brief, setting forth the claims seriatim, states that the appraiser should base his computation upon:

(1) the cost price for the raw material that the foreign manufacturer-exporter actually paid for the material delivered under normal conditions and used during the course of a normal production period for the imported manufactured article * * *

(2) the cost price paid by the manufacturer-exporter for the same kind of raw material that was last delivered to him next prior to the commencement of the

production of the imported manufactured article, irrespective of whether that particular delivery was used in the imported article * * *

(3) The quoted cost price for the same kind of raw material that could last have been purchased in time to be used in the manufacture of the imported article * * *

(4) The last price paid by the manufacturer-exporter next prior to the commencement of manufacture of the imported article, for an order of the same kind of raw material for future delivery, which raw material could not have been delivered in time for use in fabricating the particular imported article * * *.

In considering plaintiffs' claims, the element of time is the all-important factor in each of them. The stipulated facts, upon which claim "4" is based, show that delivery could not have been made in time for the yarn to enter into the production "of the particular merchandise under consideration in the usual course of business." Claim "3" is based upon a price for yarn at a time beyond the 9-month period allowed for deliveries "in the ordinary course of trade and events." Equally untenable is claim "2," based upon stipulated facts, showing that the delivery of the yarn was unduly delayed for 17 months, which is more than 9 months, "the period of time [that] * * * ordinarily elapses between the date when the British manufacturer * * * places his order with the cashmere yarn producer * * *, and the date when the said yarn is delivered * * *." Since the claims just discussed are based on conditions, established through agreed facts, that fail to show costs of cashmere yarn, like that used in the sweaters under consideration, "at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business," they must be rejected.

Plaintiffs' sole remaining claim appears in paragraph "1," hereinabove set forth. In connection therewith, I find, included within the stipulation of submission, agreed facts showing costs for the cashmere yarn used in the particular merchandise under consideration on the dates determinable under the formula, hereinbefore outlined.

For all of the reasons stated herein, I find as matter of fact:

(1) That the merchandise in question consists of cashmere sweaters exported on May 18, 1951, and on August 24, 1951.

(2) That at the times of exportation of the merchandise in question, cashmere sweaters, such as or similar to those under consideration, were not being sold or offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of the country of exportation either for domestic consumption, or for export to the United States, or in the principal market of the United States.

(3) That the costs of the cashmere yarn, used in the production of these imported sweaters are as follows:

| Reappraisement | Price per pound (British sterling) |
|---|---|
| 223280–A | 74/0 |
| 223281–A | 54/0 |

(4) That the various costs of materials of, and of fabrication, manipulation, or other processes employed in manufacturing or producing such or similar merchandise, at a time preceding the dates of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business; as well as the usual general expenses in the case of such or similar merchandise; as well as the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; as well as the addition for profit equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind; are as follows for the items of merchandise herein identified on the invoices, covered by the reappraisement appeals herein, with the below-mentioned invoice identifications, all prices being in British sterling:

| Merchandise | Materials and fabrication | General expenses | Profit | Packing | Total per doz. | Total cost per sweater |
|---|---|---|---|---|---|---|
| Appeal 223280–A | | | | | | |
| C100 per doz. | 410. 273 | 67. 5 | 95. 554 | 7. 44 | 580. 767 | 48/5d |
| C101 per doz. | 568. 272 | 93. 5 | 132. 354 | 7. 44 | 801. 566 | 66/10d |
| Appeal 223281–A | | | | | | |
| Glenshee per doz. | 281. 916 | 52. 916 | 66. 966 | 8 | 409. 798 | 34/2d |
| Strathmore per doz. | 392. 75 | 61. 75 | 90. 9 | 8 | 553. 4 | 46/1d |
| Luffness per doz. (sizes 36–42) | 679. 5 | 123. 5 | 160. 6 | 8 | 971. 6 | 80/11d |
| Luffness per doz. (size 44) | 715. 86 | 139. 83 | 171. 138 | 8 | 1034. 828 | 86/3d |
| Luffness per doz. (size 46) | 752. 22 | 143. 47 | 179. 138 | 8 | 1082. 828 | 90/3d |

Accordingly, I hold as matter of law:

(1) That the proper basis for appraisement of the cashmere sweaters in question is cost of production, as such value is defined in section 402 (f) of the Tariff Act of 1930.

(2) That for cost of production purposes under section 402 (f), *supra*, the costs of the cashmere yarn used in producing the particular merchandise under consideration are the costs as set forth in finding of fact No. (3), as hereinabove set forth.

(3)    That the statutory costs of production for the merchandise in question are as set forth in the last column appearing in finding of fact No. (4).

Judgment will be rendered accordingly.