(Reap. Dec. 8437)

CHARLES STOCKHEIMER
INTER-MARITIME FWDG. CO., INC. } *v.* UNITED STATES

Entry Nos. 888354; 953305.

(Decided on rehearing [Reap. Dec. 8277] May 16, 1955)

*Bernard B. Smith; Allerton deC. Tompkins,* associate counsel; for the plaintiffs.
*Warren E. Burger,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

OLIVER, Chief Judge: These appeals for reappraisement are concerned with the value of cashmere sweaters exported from Scotland and imported at the port of New York. They were the subject of my decision in *Charles Stockheimer* and *Inter-Maritime Fwdg. Co., Inc.* v. *United States,* 32 Cust. Ct. 553, Reap. Dec. 8277. That decision was based on a written stipulation that purported to set forth all of the different phases of market conditions relating to the merchandise. Defendant moved for a rehearing on the ground, as stated in counsel's memorandum, that certain statements contained in paragraph 6 of the agreed set of facts did not truly present the facts with respect to costs of the yarn used in the sweaters in question, with the result that the case "was not properly presented to the court by counsel for the respective parties in their briefs or in Schedules A and B, part of the stipulation of record."

Defendant's motion for rehearing was granted, and the case is before me at this time on an amended stipulation (stipulation "B") that shows a factual condition which is materially different from what appeared before me in the original stipulation (stipulation "A").

Since the new set of facts (paragraph 6 of stipulation "B") causes a definite departure from the reasoning followed in my previous decision, Reap. Dec. 8277, *supra*, I find it appropriate to discuss the case *de novo*.

Under the agreed facts, the proper basis for appraisement of the present merchandise is cost of production, defined in section 402 (f) of the Tariff Act of 1930, as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

All of the elements embodied in the foregoing definition have been established by the stipulated facts, except "The cost of materials" (cashmere yarn), section 402 (f) (1), *supra*, so the issue herein is limited to a judicial interpretation of that phase of statutory cost of production.

The agreed facts show that cashmere yarn of the kind used in the production of the sweaters in question "cannot be purchased in the open yarn market for immediate delivery," that "such cashmere yarn can be purchased only for future delivery," and that "in the ordinary course of trade and events" 6 to 12 months elapse "between the date when the British manufacturer of the specified imported sweaters places his order with the cashmere yarn producer for the yarn of the kind used in the said sweaters, and the date when the said yarn is delivered by the said yarn producer to the said sweater manufacturer." The stipulated facts further show that, "in the usual course of business and in the ordinary course of events," the sweater production period in the case of the merchandise covered by reappraisement 223280–A is 70 days, and, in the case of the articles covered by reappraisement 223281–A, is 3 months, which elapsed periods of time "ordinarily

permit the manufacture or production of the said cashmere sweaters from cashmere yarn."

The appraiser, in his official appraisement, adopted prices at which cashmere yarn producers "were offering cashmere yarn (of the kind used in the production of the specified imported sweaters) for sale for future delivery" on the dates when production of these sweaters commenced. The yarn offered for sale for future delivery on the dates used by the appraiser "could not have been delivered in time to be used in the production of the specified imported sweaters." Hence, the established facts, with respect to the appraiser's action, can be viewed as showing only that cashmere yarn, such as that used in these imported sweaters, was being *offered* on certain dates.

Offers for sale, in the absence of actual sales, have been held to be sufficient in finding *value* for tariff purposes. *Oceanic Trading Co.* v. *United States*, 21 C. C. P. A. (Customs) 146, T. D. 46478. The issue herein, however, is not a determination of *value*. The question before me involves a finding of the *cost* of materials. The terms "value" and "cost" are used frequently in section 402 of the Tariff Act of 1930, covering the statutory definitions for determining value, and in judicial interpretations thereof both terms have been given definite and distinct meanings. In the case of *United States* v. *F. W. Woolworth Co.*, 26 C. C. P. A. (Customs) 33, T. D. 49576, wherein the controversy concerned the costs of packing charges, etc., the court emphasized the distinction between "value" and "cost" as follows:

Section 402 (d) of the Tariff Act of 1930 includes within the definition of export value (the value with which we are here concerned)—

the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It would seem to be clear, therefore, that, in *ascertaining* or *estimating* export value of imported merchandise, the appraiser is required to *ascertain* or *estimate* the *costs* of containers, and other costs, charges, and expenses included in the definition of export value, and has no authority to *ascertain* or *estimate* the *value* of such containers, etc. *United States* v. *Richard & Co.* 14 Ct. Cust. Appls. 120, T. D. 41646; *United States* v. *F. W. Woolworth Co. et al., supra.* [Italics quoted.]

The case of *United States* v. *European Trading Co.*, 27 C. C. P. A. (Customs) 289, C. A. D. 103, recognized the distinction to be made between "value" and "cost" in determining statutory cost of production. Although that case arose under the Antidumping Act of 1921, the definition of cost of production contained in section 206 thereof is substantially the same as it appears in the present act, section 402 (f), *supra*. The merchandise involved in the *European Trading Co.* case was galvanized wire fish trap netting. The court held that the appraiser had erroneously included within the statutory cost of production an amount, characterized as "an export rebate," granted to the German manufacturer upon the purchase in the foreign market of wire

rods used in obtaining wire employed in the manufacture of the imported netting. In reaching its conclusion, the court stated as follows:

The Government insists, in effect, that, while the *finished netting* had no foreign value, the rods, *per se*, did have and that the *per se* foreign value of the rods, instead of their actual cost, must be taken as the element in determining the cost of production of the finished netting.

It would seem that to sustain the Government's position here would require the combining of the foreign-market value section (205) with the cost of production section (206) of the antidumping act. That is, it would require the foreign value of one of the materials (iron rods) to be determined and that value substituted for the actual cost of such iron rods in arriving at the cost of production of the completed netting. It is clear that under the statute this theory is untenable. [Italics quoted.]

The case of *Stirn* v. *United States*, 12 Ct. Cust. Appls. 42, T. D. 39981, is also in point. There, the merchandise in question consisted of dyed thrown silk, known as "organzine." The raw silk, known as silk in the gray, was supplied by J. B. Martin & Co. of Norwich, Conn., an American corporation, that purchased the material in this country and shipped it to J. B. Martin of Lyons, France, a French corporation, to be there manufactured into silk yarns, dyed, rolled on beams, and returned to the American corporation in Norwich, Conn. Although Martin of Lyons was regarded as the manufacturer in France of the imported merchandise, that company, itself, did not perform all of the processes that ultimately resulted in the imported "organzine." One company performed the twisting process which converted the raw silk into yarn. Another party dyed the material. Martin of Lyons rolled the dyed yarn on the beams and prepared it for shipment to the United States. The particular point upon which the appellate court reversed the trial tribunal (*L. & E. Stirn* v. *United States*, 41 Treas. Dec. 476, T. D. 39180) related to the profit charged by the manufacturer, Martin of Lyons, for rolling the silk on the beams. In holding that *costs* should be considered in determining statutory "cost of materials," the court stated as follows:

We do not agree with the importer's contention that the item of general expense and profit charged to Martin of Lyons by the throwster and dyer was not properly included in ascertaining the cost of these operations. The amount paid for such operations was a part of the cost of fabrication to the manufacturer, Martin of Lyons. But the item 10.55 francs for rolling, including as it did the item of profit, was more than the actual cost of that operation to the manufacturer, hence the profit of 1.43 francs could not be included in the cost of the rolling, and then be subjected to a further increase of 8 per cent, as was done in this case.

The distinction between the terms "value" and "cost," as enunciated in the above-cited cases, is consistent with the difference in the common meaning of the two words. Webster's New International Dictionary defines "value," as the "estimated or assessed worth," and in the same recognized authority, "cost" is defined as "The

amount or equivalent paid * * * for anything." Funk & Wagnalls New Standard Dictionary defines "cost" as "the price paid."

It follows from all of the foregoing that there is a clear distinction between the terms "value" and "cost." Under certain circumstances, the "value" of a commodity may also be its "cost." In the case of *Cliquot's Champagne* v. *United States*, 70 U. S. 114, the judge, in his charge to the jury, defined market value as follows:

> The market value of goods is the price at which the owner of the goods, or *the producer, holds them for sale*; the price at which they are freely offered in the market to all the world; such prices as dealers in the goods are willing to receive, and *purchasers* are made to pay, when the goods are bought and sold in the ordinary course of trade. You will perceive, therefore, that the actual cost of the goods is not the standard. On the contrary, that having been the standard, the law has been changed, and for the standard of the cost has been substituted another standard, to wit, the actual market value. [Italics supplied.]

See also *Muser* v. *Magone*, 155 U. S. 240 (at p. 249).

In the issue before me, "cost" is the standard. In a stabilized market, the cost of the yarn and the value thereof could be the same at a particular time, but in a fluctuating market, where cashmere yarn is sold only for future delivery (which is the condition presented herein), the cost of the yarn when purchased, and its value at the time when actually used, may have no relationship. The "cost of materials," determinable under the statute (section 402 (f) (1), *supra*, must be fixed or positive, i. e., a price paid. It cannot be an indefinite amount, such as a quotation or an "offering" price.

In this case, the appraiser accepted, as "the cost of materials," the "offering" prices of yarn at the time production of these imported sweaters commenced. Although such amounts might be considered, under certain conditions, to be the value of the yarn on the particular dates adopted by the appraiser, they do not, under the present issue, meet requirements of the statute. They are not a "cost," within the meaning of that word, as hereinabove analyzed. Since the appraiser's finding of "The cost of materials" was not in accordance with the specific provisions of said section 402 (f) (1), his action thereunder must be, and hereby is, held to be erroneous.

Statutory "cost of production" is not limited "to the actual cost of production of the imported merchandise," *United States* v. *Henry Maier*, 21 C. C. P. A. 41, T. D. 46378. That case arose under the Tariff Act of 1922 and involved section 402 (e) of the Tariff Act of 1922, the prototype of section 402 (f), *supra*. Section 402 (f) (1), the part of statutory "cost of production" that is directly involved in the present issue, covers—

> * * * cost of materials of * * * such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business.

Consistent with the interpretation of the statutory definition as a whole, as enunciated in the *Henry Maier* case, *supra*, it can be said with respect to the question before me, that determination of "The cost of materials," section 402 (f) (1), *supra*, is not to be confined to the cost of cashmere yarn actually used in the particular sweaters covered by the shipments under consideration. That reasoning is supported by specific language in the statute, itself, which refers to the cost of *"such or similar* merchandise." [Italics added.] The most important phase of section 402 (f) (1), *supra*, concerns the element of time. The statute not only requires that "The cost of materials" must be "at a time preceding the date of exportation of the particular merchandise under consideration," but also fixes as the appropriate time that "which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business." Summarizing the foregoing analysis, "The cost of materials," as that statutory phrase is to be invoked herein, shall be the cost of cashmere yarn, such as or similar to that used in these sweaters, at a time preceding the exportation of the present merchandise which would allow for the manufacture of the sweaters in question within the established production periods for the articles.

Plaintiffs' principal claim, as expressed in counsel's brief, is that "The cost of materials" should be

\* \* \* the cost price for the raw material that the foreign manufacturer-exporter actually paid for the material delivered under normal conditions and used during the course of a normal production period for the imported manufactured article, \* \* \*.

To support that contention, plaintiffs point to an agreed set of facts that shows an average price for the cashmere yarn used in the particular sweaters involved herein. The pertinent stipulated facts appear in the amended stipulation of submission (paragraph 6) as follows:

(6) BASIS OF INVOICE VALUE: COSTED PRICE OF YARN UNDER NORMAL AND ORDINARY CONDITIONS

The cashmere yarn used by a British sweater manufacturer in a particular pricing period is obtained, under normal and ordinary conditions, from deliveries made pursuant to various cashmere yarn purchase orders, each of the said purchase orders usually covering cashmere yarn at a specified price. Rarely are two purchase orders in the same quantities and prices. However, the kinds of yarn used in a particular kind of sweater are the same. Ordinarily and normally, cashmere sweaters contain cashmere yarn that has been received by, or delivered to the said manufacturer over a period of not more than eighteen months prior to the production of the said sweater. Yarns consisting of older, newer and recently delivered yarn, received during the said eighteen month period prior to sweater production, are totally or partially used together and/or interchangeably without identification (for all practical commercial purposes) in the manufacture of a particular sweater. The costed price (the weighted averaged purchase price of the various yarns used in the manufacture of a sweater during the particular

pricing period) of the yarns as computed by the sweater manufacturers based upon the prices paid to the producers of the cashmere yarn (used in the production of the specified sweaters) is set forth in item 5 of the attached schedules A and B.

Plaintiffs' claim, based on the foregoing stipulated facts, is without merit. First of all, it is an attempt to limit "The cost of materials" (section 402 (f) (1)) to an amount applicable to the yarn actually used in the merchandise in question, which is not the purpose of the statute, as hereinabove set forth. Counsel for plaintiffs, in their brief, characterize the amount obtainable under the foregoing quoted facts as a "costed price of yarn under *normal* and *ordinary* conditions." [Italics and quotes not supplied.] While the so-called "costed price" might be regarded as sufficient under a cost accounting formula, or, as stated in plaintiffs' brief, "for bookkeeping and accounting purposes," it is not "The cost" contemplated by section 402 (f) (1), *supra*. On the contrary, the amount thus disclosed is the result of a mathematical computation based on prices extending over an unusually long period. It will be noted that the "costed price" mentioned in the stipulated facts refers to yarn received by or delivered to the manufacturer over a period that may extend not only beyond the ordinary procurement period (6 to 12 months), but also beyond the longest elapsed time that might occur over a combined production period and a procurement period (15 months). Plaintiffs' proposed "costed price" is not acceptable under the statute.

The amended stipulation of submission includes a set of facts that I find to be decisive of the issue herein. The undisputed facts that control my disposition of the question before me appear in record (stipulation "B") as follows:

(8) LAST PRICE PAID FOR YARN (FOR FUTURE DELIVERY) ON ORDERS PLACED NEXT PRIOR TO DATE SWEATER PRODUCTION COMMENCED

That the last order for future delivery placed by the producers of the specified imported sweaters for cashmere yarn (of the same kind as used in the production of the specified imported sweaters) next prior to the date specified in paragraph 4 above (the date upon which in the usual course of business production commences on the specified imported sweaters), was on the date and at the price specified in item (7) of the attached Schedules A and B. However, the yarn being offered for sale on the date specified in said item (7) could not have been delivered in time to be used in the production of the specified imported sweaters.

The foregoing set of agreed facts meets all of the requirements of the statute, section 402 (f) (1), *supra*. These facts show a cost (a price actually paid) for cashmere yarn such as that used in the sweaters involved herein. It is a cost of materials at a time preceding the date of exportation of the merchandise in question, and it is a cost at a time which would ordinarily permit the manufacture of these particular sweaters within the usual production periods therefor. Applying those established facts to the prices agreed to by the respective parties

(schedules A (7) and B (7)), I find that the statutory "cost of materials," i. e., cashmere yarn, for the merchandise covered by reappraisement 223280–A is 110/4 per pound (British sterling) and for the merchandise covered by reappraisement 223281–A is 122/3 per pound (British sterling). That the yarn bought at those prices could not have been used in the particular sweaters covered by the shipments in question is immaterial. Of prime importance is the element of time. Actual use of the materials is relatively inconsequential.

Consideration has been given to the other claims made by plaintiffs. Neither of them can be applied herein. One is based on a quoted price, and the other relates to a cost based on delivery to the manufacturer. Both are untenable under the statutory construction applied herein.

For all of the reasons hereinabove set forth, my decision in Reap. Dec. 8277, *supra*, is modified. Accordingly, I find as matter of fact:

(1) That the merchandise in question consists of cashmere sweaters exported on May 18, 1951, and on August 24, 1951.

(2) That at the times of exportation of the merchandise in question, cashmere sweaters, such as or similar to those under consideration, were not being sold or offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of the country of exportation either for domestic consumption, or for export to the United States, or in the principal market of the United States.

(3) That the costs of cashmere yarn, such as that used in producing the sweaters involved herein, at a time preceding the date of exportation of the merchandise in question, which would ordinarily permit the manufacture of these particular sweaters within the usual production periods therefor, are as follows:

| Reappraisement | Price per pound (British sterling) |
|---|---|
| 223280–A | 110/4 |
| 223281–A | 122/3 |

(4) That the various costs of materials of, and of fabrication, manipulation, or other processes employed in manufacturing or producing such or similar merchandise, at a time preceding the dates of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business; as well as the usual general expenses in the case of such or similar merchandise; as well as the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; as well as the addition for profit equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular

merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind; are as follows for the items of merchandise herein identified on the invoices, covered by the reappraisement appeals herein, with the below-mentioned invoice identifications, all prices being in British sterling:

| Merchandise | Materials and fabrication | General expenses | Profit | Packing | Total per doz. | Total cost per sweater |
|---|---|---|---|---|---|---|
| | | Appeal 223280–A | | | | |
| C100 per doz. | 566. 868 | 67. 5 | 126. 873 | 7. 44 | 768. 681 | 64/1d |
| C101 per doz. | 779. 367 | 93. 5 | 174. 573 | 7. 44 | 1054. 880 | 87/11d |
| | | Appeal 223281–A | | | | |
| Glenshee per doz. | 546. 385 | 54. 638 | 120. 204 | 8 | 729. 227 | 60/9d |
| Strathmore per doz. | 751. 063 | 75. 106 | 165. 233 | 8 | 999. 402 | 83/3d |
| Luffness per doz. (sizes 36–42) | 1362 | 136. 2 | 299. 64 | 8 | 1805. 84 | 150/6d |
| Luffness per doz. (size 44) | 1398. 36 | 139. 83 | 307. 638 | 8 | 1853. 828 | 154/6d |
| Luffness per doz. (size 46) | 1434. 72 | 143. 47 | 315. 638 | 8 | 1901. 828 | 158/6d |

Accordingly, I hold as matter of law:

(1) That the proper basis for appraisement of the cashmere sweaters in question is cost of production, as such value is defined in section 402 (f) of the Tariff Act of 1930.

(2) That for cost of production purposes under section 402 (f), *supra*, the costs of the cashmere yarn used in producing the particular merchandise under consideration are the costs as set forth in finding of fact No. (3), as hereinabove set forth.

(3) That the statutory costs of production for the merchandise in question are as set forth in the last column appearing in finding of fact No. (4).

Judgment will be rendered accordingly.