(A. R. D. 65)

CHARLES STOCKHEIMER
INTER-MARITIME FWDG. CO., INC. } *v.* UNITED STATES

UNITED STATES     *v.*     {CHARLES STOCKHEIMER
INTER-MARITIME FWDG. CO., INC.

Entry Nos. 888354; 953305.

## Second Division, Appellate Term

(Decided March 9, 1956)

*Bernard B. Smith*; *Allerton deC. Tompkins*, associate counsel; for the importers.
*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the United States.

FORD, Judge: These are applications for review of the decision and judgment of the trial court (*Charles Stockheimer et al.* v. *United States*, 34 Cust. Ct. 500, Reap. Dec. 8437), which was filed under the provisions of title 28 U. S. C. section 2636 (a).

The merchandise involved consists of cashmere sweaters imported into the port of New York from Scotland, entry thereof being made on May 28, 1951, and on August 28, 1951. The case was submitted to the trial court upon a stipulation, which, for a clearer understanding of the issues presented, is quoted as follows:

(1) MERCHANDISE

That the merchandise covered by the above-identified appeals for reappraisement consists of cashmere sweaters imported into the United States at New York from Scotland. Each item here under appeal specified on the invoices accompanying the entry papers, is referred to with corresponding identification particulars in the columns of the attached Schedules A and B, which Schedules A and B are hereby made a part of this stipulation.

(2) BASIS OF VALUE—COST OF PRODUCTION

That at and prior to the time when the imported cashmere sweaters here under appeal, as specified in paragraph 1 above and in the attached Schedules A and B, were exported to the United States there was no "foreign value" or "export value" or "United States value" therefor, as those terms are defined in Section 402 (c), 402 (d) and 402 (e), Tariff Act of 1930 as amended, and that the proper basis of valuation for duty purposes for said sweaters is the "cost of production" as defined in Section 402 (f) of said Act.

(3) DATE OF EXPORTATION

That the dates of exportation from England of the specified imported sweaters are correctly set forth in the heading of the attached Schedules A and B.

(4) PERIOD OF TIME FOR SWEATER PRODUCTION

That in the usual course of business and in the ordinary course of events the period of time specified in item (1) of the attached Schedules A and B ordinarily elapses between the date when the completed cashmere sweaters (as imported) are finished and ready for shipment or exportation to sweater buyers, and the date when production first commences on the said sweaters, which elapsed period of time would ordinarily permit the manufacture or production of the said cashmere sweaters from cashmere yarn. The production commencement date of the cashmere sweaters here involved, based upon the specified usual sweater production period as related to the date of exportation of the imported sweaters here involved, is set forth in item (2) of the attached Schedules A and B. (Sweater production period is 70 days for appeal 223280–A and 3 months for appeal 223281–A.) [Parenthesis quoted from schedules.]

(5) PERIOD OF TIME ELAPSING BETWEEN THE PURCHASE OF YARN AND ITS DELIVERY

That cashmere yarn of the kind used in the production of the specified imported sweaters cannot be purchased in the open yarn market for immediate delivery. Such cashmere yarn can be purchased only for future delivery, and in the ordinary course of trade and events the period of time specified in item (3) of the attached Schedules A and B ordinarily elapses between the date when the British manufacturer of the specified imported sweaters places his order with the cashmere

yarn producer for the yarn of the kind used in the said sweaters, and the date when the said yarn is delivered by the said yarn producer to the said sweater manufacturer. (6 to 12 months.) [Parenthesis quoted from schedules.]

(6) BASIS OF INVOICE VALUE: COSTED PRICE OF YARN UNDER NORMAL AND ORDINARY CONDITIONS

The cashmere yarn used by a British sweater manufacturer in a particular pricing period is obtained, under normal and ordinary conditions, from deliveries made pursuant to various cashmere yarn purchase orders, each of the said purchase orders usually covering cashmere yarn at a specified price. Rarely are two purchase orders in the same quantities and prices. However, the kinds of yarn used in a particular kind of sweater are the same. Ordinarily and normally, cashmere sweaters contain cashmere yarn that has been received by, or delivered to the said manufacturer over a period of not more than eighteen months prior to the production of the said sweater. Yarns consisting of older, newer and recently delivered yarn, received during the said eighteen month period prior to sweater production, are totally or partially used together and/or interchangeably without identification (for all practical commercial purposes) in the manufacture of a particular sweater. The costed price (the weighted averaged purchase price of the various yarns used in the manufacture of a sweater during the particular pricing period) of the yarns as computed by the sweater manufacturers based upon the prices paid to the producers of the cashmere yarn (used in the production of the specified sweaters) is set forth in item 5 of the attached schedules A and B.

(7) BASIS OF APPRAISED VALUE—QUOTED YARN MARKET PRICE (FOR FUTURE DELIVERY) ON THE DATE SWEATER PRODUCTION COMMENCED

That on the date specified in paragraph 4 above (the date upon which in the usual course of business production commences on the specified imported sweaters) cashmere yarn producers were offering cashmere yarn (of the kind used in the production of the specified imported sweaters) for sale for future delivery at the price specified in item (6) of the attached Schedules A and B. However, the yarn being offered for sale (for future delivery) on the date specified in paragraph 4 above, could not have been delivered in time to be used in the production of the specified imported sweaters.

(8) LAST PRICE PAID FOR YARN (FOR FUTURE DELIVERY) ON ORDERS PLACED NEXT PRIOR TO DATE SWEATER PRODUCTION COMMENCED

That the last order for future delivery placed by the producers of the specified imported sweaters for cashmere yarn (of the same kind as used in the production of the specified imported sweaters) next prior to the date specified in paragraph 4 above (the date upon which in the usual course of business production commences on the specified imported sweaters), was on the date and at the price specified in item (7) of the attached Schedules A and B. However, the yarn being offered for sale on the date specified in said item (7) could not have been delivered in time to be used in the production of the specified imported sweaters. (Ordered 12/13/50 @ 110/4 per pound as to reappraisement 223280–A, and Ordered 5/22/51 was 122/3 per pound as to reappraisement 223281–A.) [Last parenthesis quoted from schedules A and B.]

(9) PRICE OF YARN AS LAST DELIVERED TO SWEATER PRODUCERS NEXT PRIOR TO DATE OF COMMENCEMENT OF SWEATER PRODUCTION

That the price of cashmere yarn (of the same kind as used in the production of the specified imported sweaters) as delivered to, and received by, the pro-

ducers of the specified imported sweaters next prior to the date specified in paragraph 4 above (the date upon which in the usual course of business production commences on the specified imported sweaters), as well as the date when said last delivered yarn was received by the said sweater producers, are set forth in item (8) of the attached Schedules A and B. (Yarn delivered next prior to 3/9/51—Delivered 3/1/51 @ 47/7 per pound (purchase of 10/21/49) as to reappraisement 223280–A, and as to reappraisement 223281–A, Yarn delivered next prior to 5/24/51—Delivered 5/21/51 was 67/0 per pound (purchase of 3/31/50).) [Last parenthesis quoted from schedules A and B.]

(10) PRICE OF YARN AS OF DATE WHEN IT COULD LAST HAVE BEEN PURCHASED IN TIME FOR USE IN SWEATER PRODUCTION—MINIMUM YARN DELIVERY PERIOD

Cashmere yarn producers frequently make a number of shipments of yarn over an extended period of time (shipments taking place over a period from six to twelve months after an order is placed) to fill a single order from a cashmere sweater producer for cashmere yarn. That the price of cashmere yarn (of the same kind as used in the production of the specified imported sweaters) that could last have been purchased by the producers of the specified imported sweaters so that the first yarn shipment against this purchase could be delivered in time for use in the manufacture of the specified imported sweaters, as well as the date when the latest purchase of said yarn could have been made so that the first yarn shipment against this purchase could be delivered in time for use in the manufacture of the specified imported sweaters, are set forth in item (9) of the attached Schedules A and B. (Soonest yarn delivery possible prior to 3/9/51—On 9/9/50 @ 71/6 per pound as to reappraisement 223280–A, and Soonest yarn delivery possible prior to 5/24/51—On 11/24/50 was 84/5 per pound as to reappraisement 223281–A.) [Last parenthesis quoted from schedules A and B.]

(11) COST OF MATERIALS

That both the quantity and cost of the materials (as determined from the 5 different cost bases mentioned in paragraphs 6, 7, 8, 9 and 10 above) used in the production of one dozen of the specified imported sweaters are set forth in item (10) of the attached Schedules A and B. (4.31 pounds of yarn are used in producing one dozen sweaters quality C 100. Total cost of other materials used in producing one dozen sweaters quality C 100 is 2.083 shillings. 5.81 pounds of yarn are used in producing one dozen sweaters quality C 101. Total cost of other materials used in producing one dozen sweaters quality C 101 is 16.166 shillings as to reappraisement 223280–A, and 3.875 pounds of yarn are used in producing one dozen sweaters Quality Glenshee. The total cost of other materials used in producing one dozen sweaters Quality Glenshee is 3.833 shillings. 5.25 pounds of yarn are used in producing one dozen sweaters Quality Strathmore. The total cost of other materials used in producing one dozen sweaters Quality Strathmore is 17.5 shillings. 10 pounds of yarn are used in producing all sizes of one dozen sweaters Quality Luffness. The total cost of other materials used in producing one dozen sweaters Quality Luffness, all sizes, is 16. shillings as to reappraisement 223281–A.) [Last parenthesis quoted from schedules A and B.]

(12) COST OF LABOR AND FABRICATION

That the cost of all labor, fabrication, manipulation and other processes employed in the manufacture of such and similar cashmere sweaters, at a time preceding the date of exportation of the specified imported sweaters that would ordinarily permit the production of said imported sweaters in the usual course of business, is the price, per dozen sweaters, set forth in item (11) of the attached Schedules A and B.

(13) COST OF GENERAL EXPENSES

That the cost of the usual general expenses in the case of such and similar cashmere sweaters is the price, per dozen sweaters, set forth in item (12) of the attached Schedules A and B.

(14) PROFIT

That the addition for profit which ordinarily is added by producers in Scotland engaged in the manufacture of merchandise of the same class or kind as the specified imported sweaters, is 20% of the sum of the amounts identified in paragraphs 11, 12 and 13 above, and as set forth in item (13) of the attached Schedules A and B.

(15) PACKING

That the cost of all containers and coverings and all other costs, charges and expenses incident to placing the specified imported sweaters in condition, packed ready for shipment to the United States is the price, per dozen sweaters, set forth in item (14) of the attached Schedules A and B.

(16) TOTAL PRODUCTION COSTS

That the per dozen and unit costs for the specified imported sweaters are set forth in item (15) of the attached Schedules A and B. All prices set forth in this stipulation and in the attached Schedules A and B are in British sterling shillings.

A reading of the foregoing stipulation makes it clear that embodied therein are all the elements of cost of production, except the cost of materials, which, in this case, is the cashmere yarn used in the production of the cashmere sweaters. .The question presented herein has been limited to a determination of what constitutes the cost of materials, as defined in section 402 (f) of the Tariff Act of 1930, based upon the statements of fact contained in the foregoing stipulation. Said section 402 (f) reads as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

All of the requirements of subsections 2, 3, and 4 above have been definitely agreed upon in the stipulation quoted above, leaving for the court the proper construction to be placed upon subsection 1 above, to wit: *"The cost of materials * * * employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business."* [Emphasis added.]

The appraiser, in finding the cost of the cashmere yarns used in the production of the involved sweaters, did not follow the language of the statute set out above, but instead *"* * * adopted prices at which cashmere yarn producers 'were offering cashmere yarn (of the kind used in the production of the specified imported sweaters) for sale for future delivery' on the dates when production of these sweaters commenced."* While the offers for sale of the cashmere yarn, made as aforesaid, might, under certain circumstances, tend to, or establish, a value for said yarn, it should be remembered that we are not here concerned with finding a *value* for said yarn, but rather the *cost* of the yarn used in the manufacture of the involved sweaters, or the *cost* of yarn similar thereto, at a time preceding the date of exportation of these particular sweaters which would ordinarily permit the manufacture or production of the particular sweaters under consideration in the usual course of business.

In dealing with the difference in meaning of the words "offers for sale," "cost," and "value," the trial court stated, in part:

Offers for sale, in the absence of actual sales, have been held to be sufficient in finding *value* for tariff purposes. *Oceanic Trading Co.* v. *United States*, 21 C. C. P. A. (Customs) 146, T. D. 46478. The issue herein, however, is not a determination of *value*. The question before me involves a finding of the *cost* of materials. The terms "value" and "cost" are used frequently in section 402 of the Tariff Act of 1930, covering the statutory definitions for determining value, and in judicial interpretations thereof both terms have been given definite and distinct meanings.

As supporting the above findings, the trial court cited the cases of *United States* v. *F. W. Woolworth Co.*, 26 C. C. P. A. (Customs) 33, T. D. 49576; *United States* v. *European Trading Co.*, 27 C. C. P. A. (Customs) 289, C. A. D. 103; and *Stirn* v. *United States*, 12 Ct. Cust. Appls. 42, T. D. 39981, and then stated:

In the issue before me, "cost" is the standard. In a stabilized market, the cost of the yarn and the value thereof could be the same at a particular time, but in a fluctuating market, where cashmere yarn is sold only for future delivery (which is the condition presented herein), the cost of the yarn when purchased, and its value at the time when actually used, may have no relationship. The "cost of materials," determinable under the statute (section 402 (f) (1)), *supra*, must be fixed or positive, i. e., a price paid. It cannot be an indefinite amount, such as a quotation or an "offering" price.

In this case, the appraiser accepted, as "the cost of materials," the "offering" prices of yarn at the time production of these imported sweaters commenced. Although such amounts might be considered, under certain conditions, to be the value of the yarn on the particular dates adopted by the appraiser, they do not, under the present issue, meet requirements of the statute. They are not a "cost," within the meaning of that word, as hereinabove analyzed. Since the appraiser's finding of "The cost of materials" was not in accordance with the specific provisions of said section 402 (f) (1), his action thereunder must be, and hereby is, held to be erroneous.

The principal claim of the importers is that "The cost of materials" should be—

* * * the cost price for the raw material that the foreign manufacturer-exporter actually paid for the material delivered under normal conditions and used during the course of a normal production period for the imported manufactured article, * * *.

As supporting the above contention, counsel for the importers cites us to the agreed statement of facts contained in paragraph 6 of the stipulation, heretofore set out, which shows an average or costed price for the cashmere yarn used in the production of the involved sweaters. Said paragraph 402 (f) contains no provision for, or reference to, an average or costed price, to be used in arriving at the cost of materials. In disposing of plaintiffs' contention, as set out above, the trial court employed the following language:

* * * While the so-called "costed price" might be regarded as sufficient under a cost accounting formula, or, as stated in plaintiffs' brief, "for bookkeeping and accounting purposes," it is not "The cost" contemplated by section 402 (f) (1), *supra.* On the contrary, the amount thus disclosed is the result of a mathematical computation based on prices extending over an unusually long period. It will be noted that the "costed price" mentioned in the stipulated facts refers to yarn received by or delivered to the manufacturer over a period that may extend not only beyond the ordinary procurement period (6 to 12 months), but also beyond the longest elapsed time that might occur over a combined production period and a procurement period (15 months). Plaintiffs' proposed "costed price" is not acceptable under the statute.

We are in agreement with the finding of the trial court regarding the "costed price," as quoted above, and the reasoning upon which such finding is based. The trial court accepted as decisive of the issue here presented the statement of facts contained in paragraph 8 of the stipulation, above quoted, which need not be repeated here. Based upon those facts, the trial court held as follows:

The foregoing set of agreed facts meets all of the requirements of the statute, section 402 (f) (1), *supra.* These facts show a cost (a price actually paid) for cashmere yarn such as that used in the sweaters involved herein. It is a cost of materials at a time preceding the date of exportation of the merchandise in question, and it is a cost at a time which would ordinarily permit the manufacture of these particular sweaters within the usual production periods therefor. Applying those established facts to the prices agreed to by the respective parties (schedules A (7) and B (7)), I find that the statutory "cost of materials," i. e., cashmere

yarn, for the merchandise covered by reappraisement 223280–A is 110/4 per pound (British sterling) and for the merchandise covered by reappraisement 223281–A is 122/3 per pound (British sterling). That the yarn bought at those prices could not have been used in the particular sweaters covered by the shipments in question is immaterial. Of prime importance is the element of time. Actual use of the materials is relatively inconsequential.

The last sentence of paragraph 8, quoted above, makes it quite clear that the yarn covered by said paragraph of the stipulation, and upon which the trial court based its decision in finding the cost of the yarns used in the manufacture of the involved sweaters, was not the actual yarn used in the manufacture of said sweaters because said yarn "could not have been delivered in time to be used in the production of the specified imported sweaters." This fact, however, is not material to a finding of the cost of production of the involved sweaters. In support of the above statement, the following is quoted from *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, at page 50, T. D. 46378:

From the legislative history of said Antidumping Act of 1921, it appears that said section 206 was incorporated in H. R. 2435 through an amendment reported by the Senate Committee on Finance, which was adopted by the Senate and agreed to in a conference report upon the bill. In the report of said Committee on Finance to the Senate upon the antidumping act, after reciting the substance of said section 206, we find the following:

The purpose of this definition is to create a constructive foreign-market value based on the cost of material and labor at a time preceding the date of shipment of the imported merchandise which would ordinarily permit the manufacture or production of such merchandise in the usual course of business. It is not limited to the actual cost of the imported merchandise. * * *

It would appear, therefore, that it was not the intent of Congress, when it enacted said section 206, to limit the cost of production, in cases where said section was applicable, to the actual cost of production of the imported merchandise, including actual profit realized by the manufacturer, and we think a like construction should be given to said section 402 (e) of the Tariff Act of 1922. * * *

The Government has filed a cross-appeal, in which, among other things, it assigns error in the decision and judgment of the trial court in finding and holding in both reappraisements that an offering or quoted price for materials, however *bona fide*, cannot be considered as the cost of materials under section 402 (f) (1) of the Tariff Act of 1930 and in not finding and holding, as to reappraisement 223280–A, that an offering or quoted price for materials at 120/0 per pound (British sterling) was the cost of materials provided for under the above section. Error is also assigned in the cross-appeal to the decision of the trial court in refusing to place this case upon the calendar for trial and the introduction of further evidence. The latter assignment of error may be disposed of by the statement that an examination of the record before us fails to disclose any motion or request on the part of the Government that "the case be placed on the calendar

for trial for the introduction of evidence as to the price paid or contracted to be paid by other manufacturers of such or similar sweaters for such or similar materials used in the manufacture thereof on or about March 9, 1951."

While the first two assignments of error, set out above, appear to be somewhat contradictory, discussion of these errors is not necessary at this point, since we feel that the disposition we have already made of the questions presented herein adequately disposes of all the assignments of error contained in the cross-appeal.

An examination of the factual situation presented by the other paragraphs of the stipulation, other than paragraph 8, shows a state of facts which are equally as untenable as that presented in paragraph 6 of said stipulation, hereinbefore discussed and disposed of adversely to the contention of counsel for the importers. Finding only one statement of facts in the stipulation which meets the requirements of the statute, section 402 (f) (1), the other statements can be given no weight in disposing of the questions presented by these applications for review.

In view of the thorough manner in which all the questions involved herein were handled and disposed of by the trial court, it is not deemed necessary to further extend our discussion of the same. We hereby adopt as our own the findings of fact and conclusions of law made by the trial court, as follows:

Findings of fact:

(1) That the merchandise in question consists of cashmere sweaters exported on May 18, 1951, and on August 24, 1951.

(2) That at the times of exportation of the merchandise in question, cashmere sweaters, such as or similar to those under consideration, were not being sold or offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of the country of exportation either for domestic consumption, or for export to the United States, or in the principal market of the United States.

(3) That the costs of cashmere yarn, such as that used in producing the sweaters involved herein, at a time preceding the date of exportation of the merchandise in question, which would ordinarily permit the manufacture of these particular sweaters within the usual production periods therefor, are as follows:

| Reappraisement | Price per pound (British sterling) |
|---|---|
| 223280–A | 110/4 |
| 223281–A | 122/3 |

(4) That the various costs of materials of, and of fabrication, manipulation, or other processes employed in manufacturing or producing such or similar merchandise, at a time preceding the dates of

exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business; as well as the usual general expenses in the case of such or similar merchandise; as well as the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; as well as the addition for profit equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind; are as follows for the items of merchandise herein identified on the invoices, covered by the reappraisement appeals herein, with the below-mentioned invoice identifications, all prices being in British sterling:

| Merchandise | Materials and fab- rication | General expenses | Profit | Pack- ing | Total per doz. | Total cost per sweater |
|---|---|---|---|---|---|---|
| Appeal 223280–A | | | | | | |
| C100 per doz. | 566. 868 | 67. 5 | 126. 873 | 7. 44 | 768. 681 | 64/1d |
| C101 per doz. | 779. 367 | 93. 5 | 174. 573 | 7. 44 | 1054. 880 | 87/11d |
| Appeal 223281–A | | | | | | |
| Glenshee per doz. | 546. 385 | 54. 638 | 120. 204 | 8 | 729. 227 | 60/9d |
| Strathmore per doz. | 751. 063 | 75. 106 | 165. 233 | 8 | 999. 402 | 83/3d |
| Luffness per doz. (sizes 36–42) | 1362 | 136. 2 | 299. 64 | 8 | 1805. 84 | 150/6d |
| Luffness per doz. (size 44) | 1398. 36 | 139. 83 | 307. 638 | 8 | 1853. 828 | 154/6d |
| Luffness per doz. (size 46) | 1434. 72 | 143. 47 | 315. 638 | 8 | 1901. 828 | 158/6d |

Accordingly, we hold as matter of law:

(1) That the proper basis for appraisement of the cashmere sweaters in question is cost of production, as such value is defined in section 402 (f) of the Tariff Act of 1930.

(2) That for cost of production purposes under section 402 (f), *supra*, the costs of the cashmere yarn used in producing the particular merchandise under consideration are the costs as set forth in finding of fact No. (3), as hereinabove set forth.

(3) That the statutory costs of production for the merchandise in question are as set forth in the last column appearing in finding of fact No. (4).

The decision and judgment of the trial court are, therefore, affirmed. Judgment will be rendered accordingly.