(Reap. Dec. 10989)

ERCONA CAMERA CORP. ET AL. v. UNITED STATES

Entry 725815, etc.

(Decided May 20, 1965)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* and *Allan H. Kamnitz* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

FORD, Judge: The appeals for reappraisement listed in schedule "A," attached hereto and made a part hereof, were consolidated for the purpose of trial. Counsel for both sides agreed for the record that the basis of valution for appraisement was cost of production.

The importations involved herein consist of tape recorders, manufactured in England and exported to the United States between February 1956 and July 1958.

The merchandise was entered and appraised on the basis of cost of production, as defined in section 402(f) of the Tariff Act of 1930, or constructed value under section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, which went into effect February 27, 1958. It will be noted that some of the 37 entries were made prior to February 27, 1958, and the balance after such effective date, thus engaging the court's consideration of the pertinent provisions of both of the above sections of 402, the earlier entries on the basis of cost of production and the later entries on the basis of constructed value.

The cases at bar were originally heard and submitted, at which time an affidavit was received in evidence as plaintiff's exhibit 1, and a report of a Treasury representative was received in evidence as defendant's exhibit A. Before decision, plaintiffs moved, in accordance with rule 6 of the Rules of the United States Customs Court, that the submission be set aside on the ground that, at the trial had, the issue presented to the court, by agreement of counsel, had been narrowed to one of cost of production, but that later, after the trial, in the defendant's brief, the matter of constructed value was also brought into issue. Plaintiffs then proposed to offer evidence on the issue of constructed value. Plaintiffs' motion was, accordingly, granted.

At the second hearing, plaintiffs offered into evidence another affidavit, which was received in evidence as plaintiffs' exhibit 2. The defendant offered no additional testimony, and the case was again submitted. Both counsel thereafter served supplemental briefs.

By virtue of the aforesaid consolidation of the cases herein, some entries were made prior to and some subsequent to the Customs Simplification Act, *supra*, it was necessary to adduce proof both as to cost of production and constructed value under sections 402(f) and 402(d), *supra*, respectively.

The two briefs, the two supplemental briefs, the three exhibits, and the court record will be considered as an entirety.

The statutory provisions of the tariff act mentioned, *supra*, and involved herein are as follows:

Section 402(f) and section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, follow:

[Section 402] (f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchan-

dise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

[Section 402] (d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

The only material difference between the original section 402(f) and 402(d), *supra*, as concerns the case at bar, lies in the computation of general expenses and profit. Whereas, in the earlier section addition for general expenses was limited to a minimum of 10 percent and profit to a minimum of 8 percent of the cost of materials and fabrication or processing, the new section eliminates these specific percentages and provides that the amounts to be added for general expenses and profit shall be those "usually reflected in sales of merchandise of the same general class or kind" by other manufacturers thereof.

The issue, however, in the opinion of this court, involves more than the correct dutiable value of the merchandise entered whether prior to February 27, 1958, the effective date of the Customs Simplification Act, or thereafter. We find here mainly a question of the adequacy of proof

of the plaintiffs' case, whether the two affidavits comprising their position are sufficient to sustain their burden of proof to overcome the presumption of correctness attaching to the appraiser's values.

In view of the fact that the weight and sufficiency of the plaintiffs' proof is dependent in large measure on the statements in the affidavits of R. W. Merrick, exhibits 1 and 2, the pertinent portions of plaintiffs' exhibit 1 are reproduced verbatim for closer evaluation:

6. Said sales were made directly to said Ercona firms.

7. From the aforesaid records I know that, among others, the following recorders designated by model number were manufactured and sold to Ercona Corporation or Ercona Camera Corporation:

| Model Nos. | Model Nos. | Model Nos. |
|---|---|---|
| 2A/NP | 3A/N | 66 |
| 2A/NH | 3A/NH | 66/H |
| 2 AN | 3A/NP | 66 N |
| 2 AN/H | 3A/NHP | |
| 2 AN/HP | 3 AN | |
| | 3 AN/H | |
| | 3 AS | |
| | 3A/S | |

8. Based on my knowledge of the records of my firms, the aforesaid recorders were produced immediately prior to exportation to the United States during the period between Feb. 1956 and July 1958 at the material, labour, manufacturing, general expense and packing costs, and realised the profits on their sales, in Pounds, the currency of the country of production and exportation, as follows:

| Model No. | Cost of materials and manual | Labour & mfg. expenses | General expense | Profit | Packing trade carton | Total in £ |
|---|---|---|---|---|---|---|
| 2A/NP | £21.10.0d. | 6.0.0d. | 15. 0.0d. | 5.10.0d. | 4s.0d. | 48. 4.0d. |
| 2A/NH | 22.10.0d. | 6.5.0d. | 15.12.6d. | 7.12.6d. | 4s.0d. | 52. 4.0d. |
| 2 AN | 21.10.0d. | 6.0.0d. | 15. 0.0d. | 5.10.0d. | 4s.0d. | 48. 4.0d. |
| 2AN/H | 22.10.0d. | 6.5.0d. | 15.12.6d. | 7.12.6d. | 4s.0d. | 52. 4.0d. |
| 2AN/HP | 22.10.0d. | 6.5.0d. | 15.12.6d. | 7.12.6d. | 4s.0d. | 52. 4.0d. |
| 3A/N | 21.10.0d. | 6.0.0d. | 15. 0.0d. | 6.18.5d. | 4s.0d. | 49.12.5d. |
| 3A/NH | 22.15.0d. | 6.5.0d. | 15.12.6d. | 6.14.11d. | 4s.0d. | 51.11.5d. |
| 3/NP | 21.10.0d. | 6.0.0d. | 15. 0.0d. | 6.18.5d. | 4s.0d. | 49.12.5d. |
| 3A/NHP | 22.15.0d. | 6.5.0d. | 15.12.6d. | 6.14.11d. | 4s.0d. | 51.11.5d. |
| 3AN | 21.10.0d. | 6.0.0d. | 15. 0.0d. | 6.18.5d. | 4s.0d. | 49.12.5d. |
| 3AN/H | 22.15.0d. | 6.5.0d. | 15.12.6d. | 6.14.11d. | 4s.0d. | 51.11.5d. |
| 3 AS | 27.18.0d. | 6.5.0d. | 15.12.6d. | 8. 0.6d. | 4s.0d. | 58. 0.0d. |
| 3A/S | 27.18.0d. | 6.5.0d. | 15.12.6d. | 8. 0.6d. | 4s.0d. | 58. 0.0d. |
| 66 | 24. 0.0d. | 6.0.0d. | 15. 0.0d. | 4.11.6d. | 8s.6d. | 50. 0.0d. |
| 66/H | 24. 7.0d. | 6.8.0d. | 16. 0.0d. | 5. 0.6d. | 8s.6d. | 52. 4.0d. |
| 66N | 24. 0.0d. | 6.0.0d. | 15. 0.0d. | 4.11.6d. | 8s.6d. | 50. 0.0d. |

9. With reference to the element of profit noted in the preceding figures, while I do not have access to the books and records of other manufacturers in England who are engaged in the production of recorders of the same general character or the same class or kind as the recorders which the Ferrograph

firms have manufactured and exported to Ercona Corp. of the United States and which are the subject of the proceedings in which this affidavit is being offered, from my general knowledge of the cost of materials, labor, overhead, packing, general expenses and all other costs and expenses ordinarily incurred in producing recorders in England, and from my knowledge of the selling price and business practices of other manufacturers and purchasers, it is my firm opinion that other manufacturers' profit during the period from Feb. 1956 to July 1958 was not more than the profit added by the Ferrograph firms, as noted in the preceding figures, in the manufacture and sale of the involved recorders.

At the first trial, plaintiffs had introduced into evidence only this one affidavit. This was on the issue of cost of production under section 402(f), *supra*, on entries made before February 27, 1958, the effective date of the Customs Simplification Act of 1956.

An orderly approach to the problems herein involved calls first for consideration of the importations made before the Customs Simplification Act became effective. It is apparent that plaintiffs' exhibit 1, the affidavit of Mr. Merrick, was offered in evidence to establish cost of production under section 402(f) only. Constructed value under section 402(d) had not yet been mentioned to the court.

The evidentiary worth of this affidavit must be weighed in the light of decided cases on the subject.

Counsel for the defendant argues that the aforesaid affidavit states mere conclusions, not evidentiary facts. This argument warrants consideration. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495. In that case, involving reappraisement, the sole evidence was an affidavit in which the affiant stated that "The great majority of sales * * * were in quantities of 15,000 square meters or more." These were insufficient evidentiary facts. The court held that such a statement was nothing more than the affiant's own conclusion of an ultimate issuable fact and that evidentiary facts must be found from the testimony or other evidence. The court went on to state that to consider such a statement as substantial evidence to meet plaintiff's burden of proof, because uncontradicted and unrebutted, would vitiate the mandate of Congress. It would also permit the plaintiff thereby to avoid its statutory burden of proof by introducing statements of issuable ultimate fact, unsupported by evidentiary facts, and thus shift the burden on the defendant to contradict or rebut plaintiff's "evidence."

In the case at bar, apart from the conclusions of ultimate facts rather than evidentiary facts in the affiant's affidavit, some further deterioration of its value may be deduced from paragraph numbered 9 wherein he states:

With reference to the element of profit noted in the preceding figures, while I do not have access to the books and records of other manufacturers * * *,

from my general knowledge * * *, it is my firm opinion that other manufacturers' profit * * * was not more than the profit added * * *, as noted in the preceding figures, in the manufacture and sale of the involved recorders.

This statement, based on affiant's general knowledge, without access to books and records of other manufacturers, and on his opinion, is of little probative value in establishing cost of production herein. See *M. Hashimoto et al.* v. *United States*, 69 Treas. Dec. 1431, Reap. Dec. 3818, and *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495, *supra*. The affiant's figures in the cost of production representing profit, therefore, would not represent such figures as the court requires.

On further examination of related cases which we find cited by both the plaintiffs and the defendant on the point of proof of the proper profit to be added in proving cost of production, is the case of—

*United States* v. *Henry Maier*, 21 CCPA 41, 42, T.D. 46378:

* * * the profits ordinarily made by the manufacturer of the merchandise involved constitutes some substantial evidence of profit to be added to the other elements of cost of production, * * *.

It also held that the profits of the manufacturer of the imported merchandise shall not be the sole criterion—

* * * but if there be *other evidence* in the record or *available to the parties*, the amount of profit should be determined according to the weight of all of the evidence bearing upon the subject. [Italics supplied.]

See also *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407, *infra*.

In the cases cited and following the same line of reasoning, the question was apparently one of degree of diligence in ascertaining the general expenses and profit of other manufacturers of such or similar merchandise. In the case at bar, plaintiffs, in their briefs, reiterate again and again that the affidavits portray such diligence, but the affidavits must speak for themselves, and it appears therefrom, in the opinion of this court, that there was not that degree of diligence established to harmonize it with the facts in *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147, and on remand, *Berben Corporation* v. *United States*, 51 Cust. Ct. 314, Reap. Dec. 10552, wherein the court held that due diligence was established. There, the plaintiff demonstrated the details of that diligence, ie., the plaintiff, a manufacturer of pistols in Italy, in order to ascertain the general expenses and profit of other manufacturers, sent registered letters to all other manufacturers of pistols in Italy or manufacturers of such or similar merchandise. Responses to these inquiries were not rewarding, but, by attaching copies of the letters to their exhibits,

the court was satisfied that sufficient effort had been made and, from all the indications, diligence was exercise. These details comprised evidentiary facts sufficient to warrant a finding of adequate diligence. Since the profit ordinarily added by other manufacturers in Italy of merchandise of the same general character was not ascertainable, under such circumstances, the actual profit added by the manufacturer was the statutory profit within the meaning of section 402(f) of the Tariff Act of 1930. In the instant case, the plaintiffs apparently rely on the latter *Berben* case, *supra*. But the plaintiffs' case at bar is to be differentiated from that and other cases cited, in that plaintiffs are offering what, in effect, are conclusions rather than evidentiary facts.

In plaintiffs' later affidavit, exhibit 2, not much cure is afforded their earlier affidavit, exhibit 1. In the case at bar, and on the question of diligence, the same degree of effort would be required of the manufacturers to establish proof of general expenses and profits of other manufacturers whether under section 402(f) or under section 402(d). Lack of adequacy of such diligence on the part of plaintiffs leaves undisturbed the values as set by the appraiser, the presumptively correct values.

It is noted that the parties hereto by agreement confined the issue to a cost-of-production basis, thereby obviating the necessity for discussing foreign, export, or United States value of such or similar merchandise. This, in the instant case, properly applies to the entries made both before and after the effective date of the Customs Simplification Act. In either instance, proof must be submitted as to the profit of other manufacturers of merchandise of the same general character in order to establish a correct cost of production or a constructed value. Such proof is essential to satisfy the provisions of the tariff act. See *United States* v. *Heemsoth-Kerner Corp.*, 31 CCPA 75, C.A.D. 252. See also *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378; *United States* v. *T. E. Ash et al.*, 23 CCPA 360, T.D. 48211.

In plaintiffs' exhibit 1, the affiant does not state evidentiary facts which would justify the elimination of the profit ordinarily added by such other manufacturers. The affiant does not recite or show the absence of other such manufacturers, nor does he set forth facts of inquiry to show diligent effort on his part to ascertain information of profits ordinarily added by other such manufacturers.

Reference to defendant's exhibit A, the report of Treasury Representative Erwin B. Self, on the subject of profits under cost of production, indicates that his interview with the plaintiffs' affiant was productive of general information, but unproductive of probative evidentiary facts. A bare statement that plaintiffs declared a 30 per centum

dividend in any one year is not necessarily indicative of a rate of earned profits on manufactured merchandise. It is realized that corporate practice permits dividend declarations out of a fund surplus which might have been obtained from various sources other than an earned profit on any product of its manufacture.

Plaintiffs' exhibit 2, a second affidavit by the same affiant, dated December 19, 1963, duly executed and authenticated, was the only document offered at the second trial. It refers back to the first affidavit, plaintiffs' exhibit 1.

An examination of this second affidavit reveals no cure for the insufficiency of evidentiary facts in the first affidavit, nor does it of itself supply sufficiently such evidence or facts on the cost of production herein, particularly on the point that the general expense and profit claimed by the plaintiffs were equal to that usually reflected in sales of merchandise of the same general class or kind which are made by other producers in the country of exportation.

In plaintiffs' exhibit 2, the affiant states:

\* \* \* \* \* \* \*

2. I now desire to say that in connection with the statements made in Paragraph 9 of the said affidavit concerning the element of profit noted in the cost of production figures therein, efforts were made to obtain information from other manufacturers or producers in the country of manufacture who are engaged in the production or manufacture of tape recorders but in no case were these successful. Such information is, of course, confidential and we would have adopted a similar attitude had we been so questioned.

3. However, the financial records of Companies producing merchandise of the same general character although not necessarily of the same class or kind, such as E.M.I., Murphy Radio, Ultra Electric, have been examined at the Public Records Office, and in no case do they reveal a greater profit than that shown by our own cost of production figures.

4. In addition, the amount of general expenses and profits noted in Paragraph 8 of the said affidavit reveal the amounts my company's books and records reflect in arriving at the cost of producing the tape recorders listed in Paragraph 7 of said affidavit which cost figure remained constant during the period between February 1956 and June 1958 and were applicable immediately prior to each exportation during that period of time.

5. The British Ferrograph Recorder Co., Ltd. and its successor, the Ferrograph Company Ltd. was the only British producer of quality tape recorders of the same general class or kind as those enumerated in said Paragraph 7 that were exported to the United States between February 28, 1958 and June 1958. There were to our knowledge no other producers of similar quality tape recorders in England who exported their wares to the United States.

Paragraph 5, above, uses the descriptive expression "quality tape recorders." This by itself is of indeterminate meaning and offered little aid in establishing profit figures of the cost of production. Nor does it help that the plaintiffs supplied their own figures of actual profits. See *A. N. Deringer, Inc., et al.* v. *United States*, 51 Cust. Ct.

475, Reap. Dec. 10634. Also, in *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407, *supra*, the court stated:

\* \* \* that the actual profit of the manufacturer of the involved merchandise is not the sole criterion for finding the addition for profit under section 402(f) (4), *supra*. The computation of the item of profit is not limited to any particular manufacturer or manufacturers, but rather extends to all the manufacturers of the particular merchandise under consideration as well as other manufacturers of merchandise of the same class or kind—if any—and "the amount of profit should be determined according to the weight of all the evidence bearing upon the subject."

Referring again to *Berben Corporation* v. *United States*, 51 Cust. Ct. 314, Reap. Dec. 10552, at page 318, we quote finding designated "4" therein:

4. That since the profit ordinarily added by other manufacturers in Italy of merchandise of the same general character as the pistols in question is not ascertainable, the profit added by the manufacturer of the pistols in question is the statutory profit, within the meaning of section 402(f) (4) of said tariff act.

It is noted that the above finding, as applied to the facts of that particular case, was determined only after the court was satisfied that the plaintiff had exercised sufficient diligence to ascertain the profit of competitor manufacturers. In the opinion of this court, such is not the situation in the case at bar.

On the basis of the entire record herein, the court makes the following findings of fact:

1. The merchandise involved herein consists of tape recorders, exported from England between February 1956 and July 1958.

2. The merchandise was entered and appraised on the basis of the cost of production or constructed value.

3. That the agreement between the parties that the basis of appraisement was cost of production obviated inquiry of the presence or absence of foreign, export, or United States value for the merchandise herein.

4. That there was not sufficient proof of the element of addition for profit which ordinarily is added for merchandise of the same general character as the instant merchandise by other manufacturers in the country of manufacture who are engaged in the manufacture of merchandise of the same class or kind.

5. That there was not sufficient satisfactory proof of diligence to establish the items of general expenses and profit of other manufacturers producing merchandise of the same general character as the merchandise herein involved.

6. That there was not sufficient satisfactory proof that the actual profit of the instant manufacturers represented the profit of other manufacturers of merchandise of the same class or kind in the country of exportation.

The court concludes as matters of law:

1. That the proper basis for determining the appraised value of the merchandise herein is the cost of production for that exported from England prior to February 27, 1958, when the Customs Simplification Act of 1956 became effective, and constructed value for such merchandise exported thereafter.

2. That the importer has not established evidentiary facts sufficient to meet the burden of proof to overcome the presumption of correctness attaching to the values set by the appraiser.

3. That the values as found by the appraiser represent the correct values.

Judgment will be entered accordingly.

REHEARING MOTION GRANTED