(R.D. 11462)

F. C. GERLACH & SONS, INC. *v.* UNITED STATES

Entry Nos. 775029–1/3 ; 768214–1/3.

(Decided January 10, 1968)

*Alan S. Hays* (*James A. Reed* and *Cadwalader, Wickersham & Taft* of counsel) ; *Brooks & Brooks* (*J. Joseph McDermott* of counsel) associate counsel, for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

LANDIS, Judge: The merchandise of these reappraisement appeals, consolidated for trial, consists of chinaware, earthenware, and jasperware produced by the well-known English firm Josiah Wedgwood & Sons, Limited. Two export shipments, each under appeal, are involved. The official papers are in evidence. They identify a variety of Wedgwood item merchandise exported from England in August 1962. The constructed value of the various items under section 402(d) of the

Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 70 Stat. 943, T.D. 54165, is what is in issue.

Plaintiff agrees that the statutory constructed value basis of appraisement is correct. What this dispute comes down to is the amount of constructed value proper for each item. The appraiser appraised the various items at constructed values equal to the invoice unit prices, plus 5 percent, less the 3⅓ percent trade discount, less the 2½ percent cash discount, recited in the invoices, f.o.b. port, plus packing where noted.

The amount of constructed value plaintiff claims proper for the item ware is muddied by the shifting positions plaintiff takes on this record. When plaintiff noticed these appeals for trial, it filed, concurrently therewith, rule 15 statements claiming constructed value to be "that which is invoiced at unit prices less 3⅓% trade discount, less 2½% cash discount, f.o.b. United Kingdom port, plus packing when applicable." From this "short, plain, and direct statement," as required by rule 15(d), it would appear that the only dispute was the "plus 5%" factor in the appraisement. However, on trial, in open court, plaintiff stated various alternative stances, claiming "said merchandise to be properly dutiable at a percentage of invoice unit prices f.o.b. port, plus packing when applicable" or, as restated, at "92.3 percent of the invoice prices f.o.b. United Kingdom, or in the alternative, at the percentage of invoice prices that may be established by the facts in the record." (R. 3.) While plaintiff's brief argues for constructed values computed on an "average percentage" of annual costs of producing particular items, it is difficult to say just how responsive this is to the pretrial statements.

As to this contention, it is obvious plaintiff has failed to submit to the court a "short, plain, and direct" statement required by rule 15(d)[1] and it is further evident that the statement filed does not set forth the unit value here claimed to be correct. Also, plaintiff has made no effort, as required, to set forth in its statement the precise ground for claims based on matters other than those covered by items 1 and 2.

Compliance with this rule is not difficult or onerous to plaintiff but is essential to enable the adverse party and the court to intelligently

[1] Rule 15(d) provides:

(d) Within the time and under the conditions and circumstances hereinafter specified, the plaintiff, or noticing party, and the defendant, or opposite party, as the case may be, in reappraisement appeals shall file with the court, and serve a copy upon the opposite party, a short, plain, and direct statement showing (1) the statutory basis of value contended for by that party, and (2) the unit value claimed to be the correct value of the merchandise. In the event that either party makes a claim or defense based upon matters other than those covered by items (1) and (2) above, he shall so state, and also set forth in his statement the precise ground or basis for such claim or defense.

In the event that either party shall fail to file and serve such statement or response, the court may adopt and enforce against such party such action as shall be reasonable and appropriate under the circumstances, including, but not limited to, the dismissal of the action, an order that particular facts shall be taken as established, or an order refusing to allow the non-complying party to support or oppose particular claims or defenses or prohibiting him from introducing certain evidence, or striking pleadings or written statements.

proceed with the issues pending for decision on the appeal for reappraisement. Plaintiff's dereliction is ground enough under the terms of rule 15(d) for this court to dismiss all claims now argued but which are not within the plain language of the statement filed, *A. W. Fenton, Inc.* v. *United States*, 45 Cust. Ct. 531, Reap. Dec. 9818. However, in view of the result I have reached on the merits of plaintiff's contentions in its brief, I shall now proceed to discuss the points urged in the record and briefs.

Trial of the case was limited to five selected items of Wedgwood ware out of the many invoiced and entered for consumption. Plaintiff's brief recites that "the parties agreed that proof and judicial decision as to the correct dutiable values of these [five items] would representatively settle the issues as to all of the different items." (Plaintiff's brief, pages 1 and 2.) Defendant's brief merely recites that by agreement of counsel, trial was limited to "consideration of three chinaware items, one earthenware article, and one jasper item (stoneware), which were selected as representative of the shipments involved." (Defendant's brief, page 2.) Whatever counsel agreed to are matters outside the record and my determinations here are confined to the amount of value proper for the five items selected for trial. The five items are:

Exhibit 1—Candy Box Pentefoil 2497, J2000 Sage Green & White Jasper (R64/14629, entry 775029, invoice No. 6789 Y20 VJ).

Exhibit 2—Sauce Boat Fixed New Oval Plume, W1956 Florentine Dark Blue (R64/14644, entry 768214, invoice No. 6158 Y10).

Exhibit 3—Plate 5″ 6½″ Concave, Q1100 Cream Colour Vine on Cream Colour Traditional (R64/14644, entry 768214, invoice No. 6288 Y10).

Exhibit 4—Plate 7″ 8″ Lincoln, W4267 Halford (R64/14644, entry 768214, invoice No. SAB. 6563 Y20).

Exhibit 5—Plate 10″ to 10½″ Lincoln, W4267 Halford (R64/14644, entry 768214, invoice No. SAB. 6563 Y20).

Constructed value is defined in section 402, Tariff Act of 1930, as amended, *supra*, as follows:

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise, shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

On trial, one witness testified for plaintiff and documentary evidence was introduced. Plaintiff's exhibits 6, 7, 8, and 9 (see reference to exhibits 1 through 5, *supra*) are relied on to attack the correctness of the appraisement more so than to establish the amount of constructed value proper for the five selected items. There is no need to discuss exhibits that merely attack the appraisement, since the appraisement will stand, even if erroneous, unless I find plaintiff has proved the essential elements of constructed value as provided in section 402(d). *A. N. Deringer, Inc., et al.* v. *United States*, 54 Cust. Ct. 764, A.R.D. 182, affirmed, *Id.* v. *Id.*, 53 CCPA 135, C.A.D. 890.

Plaintiff's key valuation exhibits, those that it contends establish the proper constructed value, are exhibits 10, 11, 12, 13, 14, 15, and 16. At the outset, plaintiff's case, as to the first of the elements of constructed value, the cost of materials and labor, must rise or fall on the probative value of exhibits 10 and 14 prepared by Mr. Frederick Shaw, cost accountant for Josiah Wedgwood & Sons, Limited (hereinafter Wedgwood). Mr. Shaw, it should be noted, did not appear or testify on trial. Discussion of these exhibits is more to the second point in defendant's brief arguing that plaintiff's exhibits do not establish the constructed value proper for the five selected items than to its first point that the exhibits are hearsay and incompetent to prove the statutory elements of constructed value.

Exhibits 10 and 14 are Wedgwood cost analyses of all the elements of section 402(d) constructed value. The analyses of the cost of materials and labor are charted as follows, using abbreviated headings sufficient to identify the five selected items:

Exhibit 10 titled "Specified Items—Breakdown of Costs—Year of 1962."

|  | Candy Box U.S.A. | Plate 5" U.S.A. | Sauce Boat U.S.A. | Plate 10" U.S.A. | Plate 7" U.S.A. |
|---|---|---|---|---|---|
| Cost of Production | % | % | % | % | % |
| Materials | 5. 3 | 7. 5 | 5. 7 | 14. 8 | 12. 7 |
| Labor and Other Direct Costs | 44. 2 | 36. 2 | 42. 0 | 39. 6 | 36. 3 |
|  | 49. 5 | 43. 7 | 47. 7 | 54. 4 | 49. 0 |

Exhibit 14, titled in part, "Specified Item Cost * * * ."

| | | Candy Box d/each | Plate 5″ d/each | Sauce Boat d/each | Plate 10″ d/each | Plate 7″ d/each |
|---|---|---|---|---|---|---|
| (1) | Materials | 6. 7 | 3. 3 | 37. 2 | 33. 6 | 20. 3 |
| (2) | Other | 55. 7 | 15. 6 | 274. 3 | 90. 3 | 58. 2 |
| (3) | Total | 62. 4 | 18. 9 | 311. 5 | 123. 9 | 78. 5 |

As I understand Mr. Peter Williams' testimony discussed *infra*, exhibits 10 and 14 mean to express that the cost of materials and labor used and employed in the year 1962 to produce all the items manufactured in 1962, like the five selected in this litigation, average out to the percentages recited for each item in exhibit 10 applied to arrive at the money cost in pence recited in exhibit 14.

Mr. Peter Williams, financial director of Wedgwood, testified that the details of the analysis in exhibit 10 were extracted from the cost records of Wedgwood which are kept continuously, in great detail, for every item manufactured by Wedgwood. He stated that it was based on a system designed over a period of years, largely under his personal direction and supervision, to come by a simple form readily understandable to those not familiar with the complicated business of manufacturing pottery. (R. 84.) The date of manufacture of the five selected items in this case is alluded to in the record as March 1962. (R. 97.) As near as I can make out, however, Mr. Williams did not know the actual or even approximate date the selected items were manufactured in 1962. (R. 97 through 101.) He explained that it was necessary to average out the costs over the period of a year, using percentages, because manufacturing pottery is complicated.

Many ingredients go into the manufacture of each item and they are not the same ingredients. The "recipes," he said, are confidential but many products, purchased over long periods of time, go into a single item. The ingredients are purchased in bulk but are used in relatively small quantities and the "status" of manufacture varies. Mr. Williams testified that the raw materials are mixed into liquid clays, the moisture extracted, and the clays passed through to presses where blanks are made. The blanks are fired in electric kilns and retained at that stage until "drawn upon from time to time." (R. 84.) Delivery schedules, said Mr. Williams, date approximately to the time required to carry the "blanks from that stage forward to the point where they are ready for shipment." (R. 85.) He reiterated that the actual materials contained in the five selected items may well have been bought months or years before the date of shipment.

It is not practical or accurate, according to Mr. Williams, to analyze the cost of individual batches of manufacture and, instead, Wedgwood uses figures from records of production of items over the

period of a year and not any particular month or week of a year. Wedgwood draws the information up in percentages rather than actual values, said Mr. Williams, because percentages can be easily applied to any item in the price book. He illustrated this by alluding to the average 49.5 percent cost of materials and labor for exhibit 1 recited in exhibit 10, which, he said, could be applied to other similar items, not to every item, because "the percentage of prior cost varies from one item to another." (R. 85.) Asked to state the prime costs for each item at the time of manufacture in 1962, Mr. Williams read off the total percentage figure for cost of materials and labor in exhibit 10 and stated that material costs are very consistent in price, they do not fluctuate but are subject to gradual, relatively small increases over a period. While the materials used could well have been purchased 1 or 2 years before the date used in manufacturing processes, most are purchased 6 or 8 months before they are used. Since the custom of the industry is to conduct wage negotiations once a year, Mr. Williams stated that there is usually a labor increase at the end of March so that "the most accurate method of assessing the individual cost of an individual item of manufacture, because of the long period over which part of the manufacture occurs, is to take the average cost of a substantial period, and it is our [Wedgwood] custom, and the custom of the industry in the United Kingdom, to take the financial year of operation as a basis for assessing most accurately, the cost." (R. 96.)

Mr. Williams identified exhibit 14 as a document which shows the direct costs of producing the selected five items expressed in money costs of pence per unit.

The time which is significant in measuring the cost of materials and labor specified in section 402(d)(1) is the "time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of the particular merchandise in the ordinary course of business." Plaintiff points out that costs cannot always be based on figures of a particular moment in time and says that this was judicially approved by our appeals court in *Charles Stockheimer, Inter-Maritime Forwarding Co., Inc.* v. *United States*, 44 CCPA 92, C.A.D. 642, where it stated at page 96:

As we view section 402(f) it is designed to approximate as closely as is feasible the actual cost of producing the merchandise if it were manufactured as expeditiously as could be done in a normal manner for delivery on the date of export. * * *

Plaintiff says that Wedgwood's exhibits 10 and 14 show exactly this by taking the average cost in the financial year of operation, to assess the individual cost of the individual items of manufacture; plaintiff deduces "[t]he fact that it is the custom of Wedgwood and the industry to follow a similar method emphasizes,

of course, that this customary method is the one which is followed 'in the ordinary course of business'." (Plaintiff's brief, page 20.) As I read section 402(d) and *Charles Stockheimer*, "the ordinary course of business" refers to production in "the ordinary course of business" and not, as plaintiff would have it, the method by which an industry establishes costs in "the ordinary course of business." While plaintiff does not discuss the facts in *Charles Stockheimer*, they have a familiar ring when read with the facts here. Indeed, it is my opinion that the law of that case controls my decision here.

*Charles Stockheimer* involved valuation of cashmere sweaters on cost of production basis under section 402(f) of the Tariff Act of 1930. (There is no material difference between section 402(f) cost of production and 402(d) constructed value, except in the computation of general expenses and profit. *Ercona Camera Corp. et al.* v. *United States*, 54 Cust. Ct. 675, Reap. Dec. 10989.) The only element of cost of production in issue was the amount to be computed for cost of the cashmere yarn materials of which the sweaters were made, when in fact the yarn could not be purchased for immediate delivery but had to be ordered from 6 to 12 months in advance. The parties in *Charles Stockheimer* stipulated five possible bases for computing the cost of the cashmere yarn, which our court of appeals paraphrased as follows:

[1]   The price actually paid by the producer of the sweaters for the yarn delivered at normal times and under normal conditions and used during the course of a normal production period for the manufacture of the imported sweaters. Since yarns of different ages were used, this price involves a weighted average of the purchase prices of such yarns and is referred to as a "costed" price.

[2]   The price at which, on the date when manufacture of the imported sweaters commenced, in the usual course of business, cashmere yarn of the kind used was freely offered on the market, for future delivery. Yarn ordered at that time could not have been obtained in time to be used in those sweaters. No purchases of cashmere yarn were made at that time by the producer of the sweaters.

[3]   The price paid by the producer for cashmere yarn in the last order placed prior to the date when manufacture of the imported sweaters commenced in the usual course of business. Such yarn could not have been delivered in time to be used in those sweaters.

[4]   The price paid by the producer for the last suitable cashmere yarn delivered prior to the date when manufacture of the sweaters commenced in the normal course of business.

[5]   The price at which suitable cashmere yarn could last have been purchased so that the purchase could be delivered by the time of commencing manufacture as referred to in the preceding paragraph. No purchases of such yarn were made at that time by the producer of the imported sweaters. [*Charles Stockheimer et al.* v. *United States*, 44 CCPA 92, 93, C.A.D. 642.]

The appraiser fixed the cost of materials on the price in paragraph [2] above, namely, the market price for future delivery, at the time manufacture commenced. In the reappraisement proceeding, *Charles Stockheimer* argued vigorously for the "costed" price in paragraph [1] above, much as plaintiff argues for an "average percentage" of the cost of materials here. The single judge in reappraisement computed the cost to be that in paragraph [3] above, the last price paid for yarn, prior to the time manufacture commenced, to be delivered in the future. *Charles Stockheimer et al.* v. *United States*, 34 Cust. Ct. 500, Reap. Dec. 8437. On appellate review, this court affirmed the single judge. *Charles Stockheimer et al.* v. *United States*, 36 Cust. Ct. 625, A.R.D. 65. On appeal, our appeals court reversed, indicating that where the producer has not actually made a purchase of materials at the time specified in section 402(d)(1) and "it becomes necessary to choose between the price actually paid by the producer for his last purchase prior to the specified time, and the price for which he might have made a purchase *at* the specified time" (emphasis quoted, 44 CCPA at page 95), the latter or price set forth in paragraph [5] above, is the proper amount upon which to compute cost of materials.

The value of the *Charles Stockheimer* case as a precedent here, lies in what the single judge, appellate court, and court of appeals said with respect to the argument for a "costed" average price of materials. The argument was honed on the set of stipulated facts paraphrased in paragraph [1], *supra.*

The single judge dismissed the argument for a "costed" price with the following statement (quoted with approval by the appellate division of this court in 36 Cust. Ct. at page 631):

Plaintiffs' claim, based on the foregoing stipulated facts, is without merit. First of all, it is an attempt to limit "The cost of materials" (section 402(f)(1)) to an amount applicable to the yarn actually used in the merchandise in question, which is not the purpose of the statute, as hereinabove set forth. Counsel for plaintiffs, in their brief, characterize the amount obtainable under the foregoing quoted facts as a "costed price of yarn under *normal* and *ordinary* conditions." [Italics and quotes not supplied.] While the so-called "costed price" might be regarded as sufficient under a cost accounting formula, or, as stated in plaintiffs' brief, "for bookkeeping and accounting purposes," it is not "The cost" contemplated by section 402(f)(1), *supra*. On the contrary, the amount thus disclosed is the result of a mathematical computation based on prices extending over an unusually long period. It will be noted that the "costed price" mentioned in the stipulated facts refers to yarn received by or delivered to the manufacturer over a period that may extend not only beyond the ordinary procurement period (6 to 12 months), but also beyond the longest elapsed time that might occur over a combined production period and a procurement period (15 months). Plaintiffs' proposed "costed price" is not acceptable under the statute. [34 Cust. Ct. at page 506.]

Our appeals court commented on the "costed price" argument in the following reference:

> With respect to the contention of the amicus curiae that the cost under section 402(f) should be based on the actual price of the specific materials used in the imported merchandise, it may be noted that such an interpretation would render the statement in that section relative to time, and the reference to "similar merchandise," wholly superfluous. It is not reasonable to suppose that Congress would have employed the elaborate language of section 402(f) with respect to time if the intended meaning were merely that the actual cost of materials should be employed. The foregoing remarks also apply to the so-called "costed price" of * * * [paragraph [1], *supra*], which involves merely a method of arriving at an amount for the cost of the materials actually used when it is not possible to trace any particular part of the material into a particular piece of merchandise. [44 CCPA at page 95.]

The thrust of plaintiff's argument for an "average percentage" cost of materials and labor for item merchandise, using cost records for the financial year in which all like items were produced, is broadly the same as the "costed price" argument in *Charles Stockheimer*. It is possible to distinguish the facts generally testified to in this record from the *Charles Stockheimer* facts, without changing the legal result. Where a manufacturer has not purchased materials at the time specified by section 402(d)(1), that is, at the time when manufacture was commenced, and it uses materials purchased at various prices during different periods of time, then the cost of the materials is "the offered price on the last date when * * * [the materials] could have been purchased in time for delivery on the date when such manufacture was commenced." *Charles Stockheimer et al.* v. *United States, supra*, at page 96.

The constructed values which plaintiff claims for the first time in its brief are those recited in exhibit 14, titled "SPECIFIED ITEM COST USING R. H. & S. L. PLANT LTD., GENERAL EXPENSES and PROFIT APPROPRIATE TO U.S.A. MARKET." As the title suggests, plaintiff's exhibit 14 uses the percentage of general expenses and profit "usually reflected in sales of merchandise of the same general class or kind" as the five selected items in this case, produced in the year 1962 by another manufacturer in England. Plaintiff not having proved the amount proper for cost of materials and labor under section 402(d)(1), it is unnecessary to discuss defendant's across the board attack on the competency and probative value of the evidence of general expenses and profit of another manufacturer used by plaintiff to compute its claimed constructed value. As I noted earlier, plaintiff's exhibit 14 shows constructed values expressed in money costs of pence per unit. Those money costs for materials and labor, I understand to be the applied percentages for cost of materials and labor recited in exhibit 10. No-

where in the record do I find proofs of what amounts the percentages were applied to so as to arrive at the money costs stated in exhibit 14. I cannot accept claimed values of such shadowed substance.

I find as facts:

1. That the merchandise of these appeals for reappraisement consists of five selected items of chinaware, earthenware, and jasperware, namely: (1) Candy Box Pentefoil 2497, J2000 Sage Green & White Jasper, (2) Plate 5″ 6½″ Concave, Q1100 Cream Colour Vine on Cream Colour Traditional, (3) Sauce Boat Fixed New Oval Plume, W1956 Florentine Dark Blue, (4) Plate 10″ to 10½″ Lincoln, W4267 Halford, and (5) Plate 7″ 8″ Lincoln, W4267 Halford, manufactured by Josiah Wedgwood & Sons, Limited, and exported from England in August 1962.

2. That none of the five selected items are on the final list, T.D. 54521, published by the Secretary of the Treasury pursuant to the Customs Simplification Act of 1956, T.D. 54165.

3. That, at the time of exportation of the five selected items, such or similar merchandise was not freely sold or offered for sale to all purchasers for export to the United States.

4. That, at the time of exportation of the five selected items, such or similar merchandise was not freely sold or offered for sale in the principal market of the United States for domestic consumption.

5. That the five selected items of these appeals for reappraisement were appraised on the basis of constructed value, as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (T.D. 54165), at values equal to the invoice unit prices, plus 5 percent, less 3⅓ percent trade discount, less 2½ percent cash discount, recited in the invoices, f.o.b. port, plus packing where noted.

6. That the costs of materials and labor recited in plaintiff's exhibits 10 and 14 mean to express that the cost of materials and labor used and employed to produce all items manufactured in 1962, like the five selected items of these appeals for reappraisement, averages out to the percentages recited in exhibit 10 applied to arrive at the money costs in pence recited in exhibit 14.

I conclude as a matter of law:

1. That constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended, is the proper basis for appraisement of the five selected items of these appeals.

2. That the "average percentage" of cost of materials and labor used to produce all items like the five selected items in the year 1962 is not the cost at a time preceding the date of exportation of the five selected items which would ordinarily permit the production of the five selected items in the ordinary course of business under section 402(d)(1).

3.   That plaintiff has failed to show an amount of constructed value proper for the five selected items of these appeals different from the appraised values and that the constructed values of said items are the values returned by the appraiser.

Judgment will be entered accordingly.

(R.D. 11463)